# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN ORTIZ,<br><br>Defendant. | Case No. 2:15-cr-00124-KJM-2<br><br>ORDER |

    Defendant John Ortiz moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 based on ineffective assistance of counsel. Mot., ECF No. 200. The government opposes the motion and moves to dismiss, arguing Ortiz's waiver of his right to collateral attack bars the motion. Mot. to Dismiss ("MTD"), ECF No. 211. Ortiz has filed a response, Resp., ECF No. 213.

    For reasons explained below, defendant's motion is DENIED and the government's motion to dismiss is GRANTED.

I.  BACKGROUND

    On January 11, 2017, Ortiz plead guilty to conspiracy to distribute and possess with the intent to distribute 50 grams of a mixture and substance containing a detectable amount of methamphetamine, as charged in an information. Superseding Info., ECF No. 92; Plea

Agreement, ECF No. 93; Hr'g Minutes, ECF No. 94.[1] The court sentenced Ortiz to 120 months imprisonment, followed by 36 months of supervised release, and a special assessment of $100.00. Sentencing Minutes, ECF No. 148.

The court's sentence followed the binding plea agreement made under Federal Rule of Criminal Procedure 11(c)(1)(C), in which the parties agreed to a sentence between eight and twelve years; the court sentenced in the middle of this range. Plea Agreement at 2, 3. In estimating the applicable sentencing guidelines, the government maintained Ortiz did not qualify for the safety valve—a statutory mechanism permitting relief from a mandatory minimum sentence when certain criteria are satisfied—because "he was knowingly not truthful in his answers to some material questions put to him," though "[t]he defense contest[ed] this position." *Id.* at 8; *see also* 18 U.S.C. § 3553(f)(1)−5; U.S.S.G. § 5C1.2.

The plea agreement specifically noted Ortiz had been "charged separately by Indictment in Case No. 2:15-CR-124-GEB . . . with violations of 18 U.S.C. § 371, conspiracy to deal firearms without a license . . .; and 18 U.SC. § 922(a)(1)(A), dealing firearms without a license . . . ." Plea Agreement at 2. Under the agreement, the government would move to dismiss the information in the instant case upon sentencing and would also "move to dismiss the charges against [] [Ortiz] in that [other] case within 30 days of sentencing in this case," though "the court [could] and should consider the offense conduct of the defendant in that case in sentencing in this case." *Id.* at 2, 5.

The plea agreement also outlined the government's obligations, explaining that should Ortiz violate the agreement, withdraw his guilty plea or violate his waiver of the right to appeal, the government would be relieved of its obligation not to reinstate dismissed charges against him. *Id.* at 5.

In accepting the plea deal, Ortiz contends he received ineffective assistance of counsel because his attorney did not "adequately explain[] the plea deal to [him]" and he "was

---

[1] The transcript for this hearing has not been requested by either party and is not on the court's docket.

misled into signing a plea deal that was not fair." Mot. to Vacate, ECF No. 200 at 1.[2] Specifically, defendant argues his attorney did not "ma[k]e a good argument for a lesser sentence," failed to "give the judge . . . all of the positive information about [him]," did not show up for [his] P.S.R. interview," "did not appear for another court date regarding the dismissal of the second case," and "did not argue for [a] 2 point reduction for [the] safety valve which [he] did not get . . . ." *Id.* at 1–2.

The government argues plaintiff has not provided necessary facts supporting his claim that his plea agreement was unfair or that his attorney misled him about the nature of the agreement. *See* Mot. to Dismiss at 3.

II. LEGAL STANDARD

    A. 28 U.S.C. § 2255

A federal prisoner collaterally attacking the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, filed in the court that imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, a federal court may grant relief "if the sentence was imposed in violation of the Constitution or laws of the United States." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (citations omitted).

    B. Ineffective Assistance of Counsel

A claim for relief based on ineffective assistance of counsel is comprised of two elements: (1) the defendant must show counsel's performance was so seriously deficient that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) the defendant must show counsel's deficient performance was prejudicial to the outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Analyzing the first prong, the court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. In determining whether counsel was within this range, "hindsight is

---

[2] When referencing the defendant's motion to vacate, the court cites to the internal document pagination of defendant's "Memorandum in Support of Petition."

3

discounted by pegging adequacy to 'counsel's perspective at that time' [that] investigative decisions are made and by giving a 'heavy measure of deference to counsel's judgment.'" *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (quoting *Strickland*, 466 U.S. at 691). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Errors by counsel, even if outside the range of reasonable professional assistance, do not warrant setting aside a judgment if the error would have had no effect on the judgment. *Strickland*, 466 U.S. at 691.

III. DISCUSSION

Ortiz's claim is barred by his waiver of the right to collateral attack. Even if it was not, he has not shown ineffective assistance of counsel warranting relief. Ortiz alleges that his plea and sentence are unconstitutional due to ineffective assistance of counsel; however, in the plea agreement he waived his right to collateral attack. As explained below, because that waiver was made knowingly, voluntarily and was not itself tainted by the ineffective assistance of counsel, it is enforceable. And, waiver notwithstanding, Ortiz's ineffective assistance of counsel allegations lack merit.

A. Waiver

A knowing and voluntary express waiver of the right to collateral attack under § 2255 in a plea agreement is enforceable. *See United States v. Abarca*, 985 F.2d 1012, 1013–14 (9th Cir. 1993); *see also United States v. McTiernan*, 552 F. App'x 749, 750 (9th Cir. 2014) (citing *Abarca*, 985 F.2d at 1014) (holding waiver of right to collateral attack in plea agreement was "unambiguously stated and knowingly and voluntarily made, and so [wa]s valid and enforceable"). Waivers of appellate rights or the right to collateral attack are unenforceable, however, with respect to ineffective assistance of counsel claims challenging the voluntariness of the waiver itself. *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005); *see also United States v. Chan*, 721 F. App'x 728 (9th Cir. 2018); *cf. United States v. Magueflor*, 220 F. App'x 603, 604–05 (9th Cir. 2007) (noting counsel's ineffective assistance occurring after defendant signs a plea agreement cannot retroactively invalidate agreement's waiver of right to collaterally

attack sentence; ineffective assistance of counsel must occur prior to entry of plea); *Martinez-Carranza v. United States*, No. 1:13-CR-00107-AWI, 2015 WL 2159821, at *4 (E.D. Cal. May 7, 2015), *aff'd*, 693 F. App'x 672 (9th Cir. 2017) ("Because the alleged ineffectiveness relates to the events leading up to the [post-plea] safety valve meeting and not to the plea agreement itself, the waiver clause applies.").

The Ninth Circuit has not treated the enforceability of waivers of collateral attack for ineffective assistance of counsel not implicating the voluntariness of the waiver, but other district courts in the circuit have expressed considerable skepticism. *See Ceja v. United States*, 2010 WL 4806904, at *2-3 (E.D. Cal. Nov. 18, 2010) ("[B]road application of a rule that exempts claims of ineffective assistance of counsel from plea agreement waivers undercuts the value of waivers generally since almost any habeas claim can be cast in terms of ineffective assistance of counsel.") (citing *United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002) (expressing concern per se rule exempting ineffective assistance of counsel claims from waiver renders waiver meaningless).); *see also Pastoriza-Valerio v. United States*, 2009 WL 69326, at *5 (S.D. Cal. Jan. 9 2009) ("A defendant may not 'dress up' a claim as a Sixth Amendment violation when 'in reality he is challenging the correctness of his sentence.'") (quoting *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998).

In determining whether a defendant knowingly and voluntarily waived a right in a plea agreement, courts consider the "circumstances surrounding the signing and entry of the plea agreement . . . ." *United States v. Lo*, 839 F.3d 777, 783 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 354 (2017) (citation and internal quotation marks omitted).

Ortiz's waiver of the right generally to collateral attack was express, knowing and voluntary. He entered into the plea agreement at issue here on December 8, 2016. *See* Plea Agreement. The agreement contained an express general waiver of Ortiz's right to appeal and to file a motion to attack his sentence under § 2255. *Id.* at 9. As discussed above, a general waiver waives the right to bring an ineffective assistance of counsel challenge except insofar as the ineffective assistance taints the voluntariness of the plea itself. *Washington*, 422 F.3d at 871. Although the parties have not requested a transcript of the plea hearing, the court's standard

colloquy closely follows the requirements of Federal Rule of Criminal Procedure Rule 11(b)(1), and there is no reason here to believe Ortiz did not affirm in open court that he understood his waiver of the right to appeal and collateral attack.

Ortiz indicates only that his counsel did not "adequately explain[] the plea deal to [him]" and he "took his advice in signing" but "feel[s] [he] was misled into signing a plea deal that was not fair." Mot. at 1. He does not, however, identify in detail what representations his attorney made that were misleading or inadequate. Ortiz's conclusory statements do not support a conclusion that his lawyer acted outside the range of reasonable counsel as required by the first *Strickland* prong. Neither does Ortiz explain how the plea agreement differs in effect from his expectations at the time he entered into it. The sentencing range between eight and twelve years is explicit in the agreement, as are the parties' positions on the safety valve consideration. Plea Agreement at 2, 8.

Ortiz alleges in greater detail that his lawyer was deficient at sentencing in failing to properly argue for applicability of the safety valve. Mot. at 1; Resp. at 2. These alleged deficiencies occurred after execution of the plea agreement, which contained the waiver of the right to collateral attack. As discussed above, acts or omissions by a § 2255 petitioner's attorney after the entry of a valid waiver of the right to collateral attack cannot retroactively invalidate an otherwise valid waiver.

The court finds Ortiz's waiver of the right to collateral attack was knowing and voluntary, and he does not point to facts showing the waiver itself was tainted by ineffective assistance of counsel. Thus, the waiver is enforceable and bars collateral attack based on the balance of the acts alleged in Ortiz's motion.

B.  Ineffective Assistance of Counsel

Even if Ortiz could show the waiver was unenforceable, he would not prevail on his ineffective assistance of counsel claims relating to his sentencing. His allegations that his attorney, Jeffrey Staniels, misled him about his plea agreement are conclusory and their factual basis is unclear. The court cannot find counsel's acts leading up to the plea agreement were outside the range of reasonable lawyering on the record before it.

Ortiz brings four challenges to his attorney's conduct: His attorney (1) "should have made a good argument for a lesser sentence, however, he did not[,]" and "he did not give the judge . . . all of the positive information about myself in order to make a fair judgment[]"; (2) did not argue for the 2-point safety valve credit; (3) did not show up for the presentencing report interview; and (4) did not appear for "another court date regarding the dismissal of the second case." Mot. at 1–2.

As to Ortiz's first challenge, the *Strickland* standard is not intended to address the quality of legal representation so long as the strategies employed by counsel are reasonable under the circumstances. Indeed, *Strickland* contemplates the need for counsel to exercise discretion to withhold weaker arguments or evidence strategically. It does not impose upon counsel the burden to advance every possible argument or every piece of mitigating evidence. Here, nothing in the record calls into question any judgment defense counsel was exercising at sentencing. Moreover, Ortiz does not link counsel's actions to a prejudicial effect except to suggest the obvious disappointment with a higher sentence than he had hoped for.

Ortiz's second claim that defense counsel did not argue for the 2-point safety valve credit is contradicted by the record. Defense counsel argued for the applicability of the safety valve in his objection to the presentence report ("PSR"), ECF No. 114-2, as well as in his sentencing memorandum, ECF No. 128, 128-1, his reply to the government's sentencing memorandum, ECF No. 142, and at the sentencing hearing, Sentencing Transcript, ECF No. 203 at 12–13, 19.

Regarding Ortiz's third claim, defense counsel was not physically present for the presentencing report interview, but he was present by telephone. PSR ¶ 17, ECF No. 114. The Probation Officer used only investigative materials and statements from counsel in drafting the offense conduct section of the PSR. PSR ¶ 4. Probation did not question Ortiz about the offense conduct and so he was not at a critical phase of proceedings necessitating counsel's presence. *Ingmere v. Ryan*, 122 F. Appx. 334, 335 (9th Cir. 2005) ("Because a pre-sentence interview in a non-capital case is not a 'critical stage' of trial, [defendant] had no constitutional right to counsel at the interview."). The court finds no authority suggesting that an attorney's appearance by

telephone at a presentence report interview is outside the bounds of reasonable representation. And Ortiz makes no allegations supporting a different conclusion. Ortiz has also not explained how counsel's physical absence from the probation interview prejudiced him.

Lastly, defense counsel's absence at a routine status conference in the separate firearms trafficking case did not prejudice defendant. Although the court at the status set a trial confirmation hearing, it appears no legal matter of substance was discussed or decided. *See* ECF 200, *United States v. Tamasoa*, No. 2:15-CR-00209-GEB (E.D. Cal. May 26, 2017) (status conference minutes). Within a few days, counsel filed a status report with the court explaining and apologizing for his absence, and reviewing the status of both cases. *Id.*, ECF No. 203 (status report). And within a month thereafter, as provided by the plea agreement in this case, the firearms trafficking case against Ortiz was dismissed. *Id.*, ECF No. 211 (order dismissing indictment).

Thus, even if Ortiz were to demonstrate additional facts showing his waiver of his right to collateral attack was invalid, he still would not prevail on his ineffective assistance of counsel claims going to the later events.

C. Certificate of Appealability

A court may only issue a certificate of appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Ortiz's argument that his attorney failed to properly explain his plea deal to him and that he was thus misled into signing is effectively an argument about ineffective assistance of counsel tainting the waiver of his right to collateral attack. As discussed above, if credited, his right to attack his sentence on these grounds would be exempt from the waiver. *Washington*, 422 F.3d at 871. Yet he states only bare conclusions without factual support or detail to make this argument. In addition, he states no facts showing he was prejudiced by the alleged ineffective

8

assistance of counsel, a necessary part of any ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). On this record, the court finds that jurists of reason could not debate whether the petition states a valid claim nor could they find it debatable whether the court is correct in its ruling. Thus, no certificate of appealability will issue.

IV. CONCLUSION

For the foregoing reasons,

1. Defendant's motion to vacate his sentence is DENIED;
2. The government's motion to dismiss is GRANTED;
3. The Clerk of Court is directed to close the companion case 2:18-cv-1289-KJM; and
4. The court declines to issue a Certificate of Appealability under 28 U.S.C. § 2253(c)(2).

This order resolves ECF No. 200 and ECF No. 211.

IT IS SO ORDERED

DATED: December 11, 2019.

_____
UNITED STATES DISTRICT JUDGE